FARMLAND INDUSTRIES, INC., et al.,
Appellants/Cross–Respondents,

v.

REPUBLIC INSURANCE CO., et al.,
Respondents/Cross–Appellants.

No. 79032.

Supreme Court of Missouri,
En Banc.

March 25, 1997.

Douglas Y. Curran, David L. Heinemann, Kansas City, Nancer H. Ballard, Nina R. Michkin, Charles N. Le Ray, Boston, Massachusetts, for Appellants/Cross–Respondents.

Joel R. Mosher, Stephen M. Bledsoe, Richard M. Paul, III, Kansas City, for Millers' Mutual Insurance Association.

Alan K. Goldstein, St. Louis, for Home Insurance Co. and Home Indemnity Co.

Margaret A. Arnold, Wayne S. Karbal, Chicago, Illinois, William T. Session, Margaret Pemberton, Kansas City, for Hartford Accident & Indemnity Co. and First State Insurance Co.

Alan C. Kohn, St. Louis, for Respondents/Cross–Appellants.

Lewis C. Green, Bruce A. Morrison, Kathleen G. Henry, St.Louis, for Amicus Curiae, Superior Equipment Co., Inc.

Jeremiah W. (Jay) Nixon, Attorney General, Shelley A. Woods, Assistant Attorney General, Jefferson City, for Amicus Curiae, State.

Sherri C. Strand, St. Louis, Stephan G. Weil, Washington, D.C., Joe B. Whisler, Susan E. McKeon, Kansas City, for Amicus Curiae.

John H. Gross, Seth B. Schafler, Lee M. Epstein, New York City, for Amicus Curiae, Gold Fields American Corp., Emerson Electric Co., Monsanto Co., Trans World Airlines, Inc., and Union Electric Co.

Laura A. Foggan, Daniel E. Troy, Bryan N. Tramont, Washington, D.C., for Amicus Curiae, Insurance Environmental Litigation Association.

COVINGTON, Judge.

Farmland Industries, Farmer's Chemical Company, and Union Equity Cooperative Exchange (collectively "Farmland") filed a declaratory judgment action in the Circuit Court of Clay County against Respondent insurance companies. These companies include Republic Insurance Company, Millers' Mutual Insurance Association of Illinois, The Home Insurance Company, The Home Indemnity Company, First State Insurance Company, and Hartford Accident and Indemnity Company. Farmland asserted that Respondents are obligated to defend and indemnify Farmland for environmental response costs under the comprehensive general liability insurance policies, umbrella policies, and other excess liability policies that Respondents sold to Farmland and its predecessors in interest. The trial court determined that environmental response costs were not "damages" within the meaning of the policies and granted Respondents' cross-motion for summary judgment. Farmland appealed, and this Court transferred the case prior to an opinion of the Missouri Court of Appeals. The judgment of the trial court is reversed and the case is remanded for further proceedings.

The Comprehensive Environmental Response Compensation Liability Act of 1980 (CERCLA), as amended, 42 U.S.C.A. §§ 9601–9675 (West 1995 & Supp.1997), and analogous state statutes impose liability on individuals and companies who own or operate, or formerly owned or operated, facilities from which hazardous substances have been released. 42 U.S.C.A. § 9607(a). The law also imposes liability if an individual or company arranged for the treatment or disposal of hazardous substances at a facility from which hazardous substances have been released. *Id.*

CERCLA provides two responses to environmental harm: removal[1] and remedial action.[2] 42 U.S.C.A. § 9601(25). The costs of

---

1. Under CERCLA the terms "remove" and "removal" mean

the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term[s] include[ ], in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act [42 U.S.C.A. § 5121 *et seq.*]

42 U.S.C.A. § 9601(23).

2. Under CERCLA the terms "remedy" and "remedial action" mean

those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of

these responses are commonly known as "environmental response costs." The government may require a responsible party to pay environmental response costs through one or more means. The Environmental Protection Agency (EPA) itself may conduct removal and remedial work, then sue responsible parties for reimbursement. 42 U.S.C.A. § 9604(a)(1). The EPA may seek injunctive relief requiring the responsible parties to abate the danger of a hazardous substance or the threatened release of a hazardous substance. 42 U.S.C.A. § 9606(a). CERCLA provides that the EPA may enter into an agreement with responsible parties to perform any response action. 42 U.S.C.A. § 9622(a). Following approval by the Attorney General of the United States, the agreement is entered as a consent decree in the appropriate United States district court. 42 U.S.C.A. § 9622(d)(1)(A).

Farmland purchased comprehensive general liability policies, umbrella policies, and other excess liability policies from Respondents. The policies contain language identical or similar to the following:

> hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term[s] include[ ] the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term[s] include[ ] offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... property damage.... [3]

Some of the policies do not contain a definition of the term "damages." The policies that do define "damages" do not distinguish between legal and equitable damages. The policies that define "damages" do so in the following manner:

> "[D]amages" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage.[4]

In 1994, Farmland filed suit, seeking a declaration that Respondents were obligated to defend and/or indemnify Farmland under the companies' respective insurance policies with respect to property damage and personal injury at sites located in Missouri and elsewhere. In its petition, Farmland alleged that it has incurred and/or faces the potential for substantial defense costs and liability for damages arising from alleged property damage and personal injury at and near these

42 U.S.C.A. § 9601(24).

3. For example, the Home Indemnity Company comprehensive general liability policy provides, "The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... property damage." The First State Insurance Company excess umbrella policy provides: "The Company hereby agrees ... to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential, and expenses on account of ... Property Damage...." The Millers' Mutual Insurance Association of Illinois umbrella policy provides: "The Company hereby agrees to indemnify the Insured against such ultimate net loss in excess of underlying limits as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of ... property damage...." The policy defines "ultimate net loss" as "the total sum which the Insured, or any Company as his insurer, or both, become [sic] obligated to pay by reason of ... property damage ... either through adjudication or compromise."

4. *See, e.g.,* Home Indemnity Policy.

sites. Farmland alleged that the EPA and/or state agencies have required Farmland to conduct investigation and/or remediation activities. Farmland presented evidence that it has entered various consent agreements with the EPA and state agencies to respond to hazardous substances at the sites at issue.

Farmland filed a motion for partial summary judgment, asking the court to find that under Missouri law, environmental response costs incurred pursuant to CERCLA and similar state laws constitute "damages" as the term is used in the policies at issue. Respondents filed a cross-motion for summary judgment, arguing that the term "damages" does not include environmental response costs. The trial court entered an order denying Farmland's motion for partial summary judgment and sustaining respondents' cross-motion for summary judgment.

■ The issue, one of first impression for this Court, is whether environmental response costs incurred pursuant to CERCLA and similar state laws are "damages" within the meaning of the policies Respondents issued to Farmland. The parties agree that the environmental responses, when required of a responsible party by the government, are in the nature of equitable relief; the parties disagree on the question of whether the cost of this equitable relief is included within the policy term "damages." Farmland argues that the ordinary meaning of "damages" includes equitable relief. Respondents counter that the term "damages" means "legal damages," payments to third persons when those persons have a legal claim for damages. Respondents assert that "damages" does not include the cost of equitable remedies.

■ Although the issue presented is one of first impression in Missouri, Missouri's law governing interpretation of language in an insurance policy is settled. When interpreting the language of an insurance policy, this Court gives a term its ordinary meaning, unless it plainly appears that a technical meaning was intended. *Peters v. Employers Mut. Casualty Co.*, 853 S.W.2d 300, 303 (Mo. banc 1993); *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 27 (Mo.1969). The ordinary meaning of a term is the meaning that the average layperson would reasonably understand. *Peters*, 853 S.W.2d at 303; *Greer*, 441 S.W.2d at 27.

The insurance policies at issue do not indicate that the parties plainly intended to give "damages" a technical meaning. In some of the policies at issue, the term "damages" is not defined. The policies that do define "damages" make no reference to a definition that distinguishes between legal and equitable relief. This Court will, therefore, give the term "damages" its ordinary meaning.

■ To determine the ordinary meaning of a term, this Court consults standard English language dictionaries. *See, e.g., Peters*, 853 S.W.2d at 303 n. 2 (rejecting insurer's technical definition purportedly used within the insurance industry and instead adopting definition from Webster's Third New International Dictionary and other standard English language dictionaries); *Greer*, 441 S.W.2d at 27; *Levin v. State Farm Mut. Auto. Ins. Co.*, 510 S.W.2d 455, 459 (Mo. banc 1974).

Reference to standard English language dictionaries reveals that "damages" means "the estimated reparation in money for detriment or injury sustained." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 571 (1961). Webster's also defines "damages" as "compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." *Id.* These definitions of "damages," those that a layperson would reasonably understand "damages" to mean, are broad and inclusive. The ordinary meaning of damages, therefore, includes environmental response costs required by the government.

Respondents nevertheless argue that "damages" does not include equitable relief even if "damages" is given its ordinary meaning. Respondents contend that the government has ordered that Farmland undertake specific actions in this case, such as investigating, planning, and cleaning up pollution. Respondents argue that such actions are not the "money equivalent for detriment or injuries sustained;" therefore, they are not "damages."

Respondents' argument fails. The definitions of "damages" do not distinguish between legal damages and equitable relief. Farmland's cost of undertaking the actions required by the government under CERCLA or similar state laws are "damages" within the ordinary meaning of the term. In other words, the equitable relief at issue is a cost that Farmland is legally obligated to pay as compensation or satisfaction for a wrong or injury. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 703, 607 N.E.2d 1204, 1216 (1992); *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 944 F.2d 940, 945–46 (D.C.Cir.1991), *cert. denied*, 503 U.S. 1011, 112 S.Ct. 1777, 118 L.Ed.2d 435 (1992).

Respondents rely on *McDonough v. Liberty Mut. Ins. Co.* for the proposition that the ordinary meaning of "damages" does not include equitable relief under Missouri law even if the term is given its ordinary meaning. 921 S.W.2d 90 (Mo.App.1996). In that case, the Schiffs filed suit against McDonough in her capacity as trustee of the Terrace Gardens Subdivision after the subdivision refused to allow the Schiffs to construct a hockey rink on their property. *Id.* at 92. The Schiffs sought a declaratory judgment regarding the right to build the rink and sought relief under a theory of promissory estoppel. *Id.* The homeowner's policy at issue stated that Liberty Mutual would pay for a claim and defend a suit, "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence...." *Id.* McDonough asked Liberty Mutual to defend the suit; Liberty Mutual refused. *Id.* at 93.

The Missouri Court of Appeals, Eastern District, correctly stated that Missouri law requires that the term "damages" be given its ordinary meaning. *Id.* at 93. The court then looked to Black's Law Dictionary to define the term as "[a] pecuniary compensation or indemnity ... [a] sum of money awarded to a person injured by the tort of another." *Id.* at 94, citing BLACK'S LAW DICTIONARY 351 (5th ed. 1979). The court also looked to a standard English language dictionary for the definition, "compensation in

money imposed by law for loss or injury." *Id.*, citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 323 (1991). Using these definitions, the court held that the term damages "is limited to monetary damages and does not include equitable relief." *Id.* The court concluded that the Schiffs' suit requested equitable relief, namely a declaratory judgment and specific performance, not "damages." *Id.* The court also found that the circumstances of the Schiffs' suit did not meet the "occurrence" requirement of the policy; the court of appeals found that an act of the board of trustees is not an "occurrence." *Id.*

The *McDonough* court was incorrect when it stated that "damages is limited to monetary damages and does not include equitable relief." The reason the court reached this incorrect conclusion is likely a product of the facts of the case. The *McDonough* court was considering whether the Schiffs' request for an order permitting them to build a hockey rink in the future was a claim for "damages because of ... property damage caused by an occurrence...." *Id.* at 92. With this question in mind, the *McDonough* court determined that the policy did not cover such a claim. The court's conclusion that the policy does not cover such a claim may be correct, but not because "damages" does not include equitable relief. For the reasons stated above, the ordinary meaning of "damages" includes a claim for equitable relief.

Respondents also contend that "in the insurance context" the ordinary definition of "damages" does not include response costs. Respondents claim that a word must be considered "in the insurance context" because only in that context is the meaning of the word and the intent of the parties clear. Respondents rely on *Continental Ins. Co. v. Northeastern Pharmaceutical & Chem. Co.* (*NEPACCO*) for the proposition that "damages" should be defined "in the insurance context" rather than "outside the insurance context." 842 F.2d 977 (8th Cir.)(en banc), *cert. denied*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). The *NEPACCO* court reasoned, "Viewed outside the insurance context, the term 'damages' is ambiguous: it is reasonably open to different constructions."

*Id.* at 985. The *NEPACCO* court concluded that "from the viewpoint of the lay insured, the term 'damages' could reasonably include all monetary claims, whether such claims are described as damages, expenses, costs, or losses." *Id.* Nonetheless, the *NEPACCO* court went on to say that the word "damages" must be defined "within the insurance context." In that context, the *NEPACCO* court determined that the plain meaning of damages refers to legal damages and does not include equitable monetary relief. *Id.* at 985–86, *citing Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348, 1352 (4th Cir. 1987); *Maryland Casualty Co. v. Armco, Inc.,* 643 F.Supp. 430, 432 (D.Md.1986); *Aetna Casualty & Sur. Co. v. Hanna,* 224 F.2d 499, 503 (5th Cir.1955); *Desrochers v. New York Casualty Co.,* 99 N.H. 129, 106 A.2d 196, 198–99 (1954).

■ The *NEPACCO* court misconstrues and circumvents Missouri law. The cases upon which the *NEPACCO* court relies for the proposition that "damages" distinguishes between claims at law and claims at equity are not persuasive. The cases do not determine the ordinary meaning of "damages" as required by Missouri law. Furthermore, no authority allows this Court to define words "in the insurance context." To give words in an insurance contract a technical meaning simply by reading them "in the insurance context," would render meaningless our law's requirement that words be given their ordinary meaning unless a technical meaning is plainly intended. *Peters,* 853 S.W.2d at 303. Certainly, Missouri courts consider a word within the context of a sentence or a writing when determining the meaning of a word. Considering context in this respect, however, is quite different from considering a word "in the insurance context."

Even "in the insurance context," it is unlikely that "damages" would exclude costs arising from equitable relief. The Dictionary of Insurance Terms defines "damages" as "the sum the insurance company is legally obligated to pay an insured for losses incurred." HARVEY W. RUBIN, DICTIONARY OF INSURANCE TERMS 71 (1987). Similarly, the Dictionary of Insurance defines "damages" as "the estimated reparation in money for

injuries sustained." LEWIS E. DAVIDS, DICTIONARY OF INSURANCE 85 (6th rev. ed. 1983). These insurance dictionary definitions would include equitable relief.

Respondents cite *Brugioni v. Maryland Casualty Co.* for the general rule of insurance contract interpretation that "every clause must be given some meaning if it is reasonably possible to do so." 382 S.W.2d 707, 712 (Mo.1964). The contracts state, in pertinent part,

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of . . . property damage. . . .

Respondents argue that "damages" cannot include both legal and equitable relief because that would render the term "damages" superfluous when read in context with the phrase "all sums which the insured shall become legally obligated to pay." Respondents explain, "Certainly the plain meaning of a promise to pay sums the policyholder has become legally obligated to pay 'as damages' does not mean a promise to pay sums the policyholder has become legally obligated to pay, regardless of whether they arise 'as damages.'" Respondents further rely upon *NEPACCO* which states, "If the term 'damages' is given the broad, boundless connotations sought by the [insured], then the term 'damages' in the contract . . . would become mere surplusage, because any obligation to pay would be covered." 842 F.2d at 986, *citing Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d at 1352.

This Court does not agree that the term "damages" is rendered superfluous when given its ordinary meaning, a meaning which includes equitable relief. The word "damages" is used to make clear that insurers are obligated to cover both direct and consequential losses because of property damage for which an insured can be held liable, irrespective of whether the claimant itself has sustained property damage. This is evidenced by the fact that the only policies that define "damages" do so by explaining that damages includes "loss of use of property resulting from property damage." *See supra* note 4 and accompanying text. Furthermore, unlike response costs, fines or penalties are not

included within the ordinary meaning of "damages." The ordinary meaning of a "fine" or "penalty" is not compensation or reparation for an injury; rather, it is a sum imposed as punishment. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 852, 1668 (1961). Because fines and penalties are not "damages," the term limits liability under the policy to something less than "all sums which the insured shall become legally obligated to pay because of property damage." *See Independent Petrochemical Corp.*, 944 F.2d at 947; *Bausch & Lomb v. Utica Mut. Ins. Co.*, 330 Md. 758, 625 A.2d 1021, 1033 (1993). Respondents' argument is not persuasive.

Respondents also argue that, had the parties intended the policies to cover equitable relief, the policies would have stated this explicitly. Respondents argue that Farmland is asking this Court to rewrite the insurance contract to include the phrase "damages or equitable relief." Respondents' argument ignores the ordinary meaning of the term "damages." Because the ordinary meaning of "damages" includes legal and equitable relief, use of the term "damages" is sufficient.

Respondents assert that because the consent decrees at issue require Farmland to clean up its own property, "the notion that Farmland's liability insurance covers such costs 'as damages' is even more farfetched." Respondents reason that the primary purpose of liability insurance is to protect policyholders against claims for damages by third parties who actually sustain some injury or harm. Respondents argue that the government brings an action under CERCLA to enforce compliance with the statutory and regulatory scheme, not to compensate the government for injuries sustained. Respondents conclude that compliance with the law, even when required by a consent decree, is a cost of doing business and is not damages.

This Court does not find Respondents' argument persuasive. CERCLA permits responsible parties to insure against the cost of actions for which they are liable. *See* 42 U.S.C.A. § 9607(e)(1). Congress has already made the relevant public policy determinations. It is not for this Court to decide the issue on public policy grounds. The question is only whether the term "damages" includes environmental response costs. *See A.Y. McDonald Indus. Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 615 (Iowa 1991).

Respondents assert that when CERCLA was enacted in 1980, it created a broad and unprecedented scheme for civil liability that neither Farmland nor Respondents could have contemplated at the time they were contracting and determining a fair premium. Respondents conclude that the parties could not have intended for the policies to cover environmental response costs required under CERCLA at the time of contracting; therefore, such response costs cannot be included within the policy term "damages."

Respondents' argument would require the parties to an insurance agreement to be prescient with respect to possible types of relief that the law might provide in the future. It would defy logic to hold that a cause of action is not covered simply because it did not exist at the time the parties entered the insurance agreement. Furthermore, Respondents' argument disregards Missouri's rules governing interpretation of the terms of an insurance contract. This Court gives a policy term its ordinary meaning, unless a technical meaning was plainly intended. *Peters*, 853 S.W.2d at 303. The ordinary meaning of "damages" is so broad that it encompasses types of relief not available under the law at the time the policy was drafted, including environmental response costs.

Respondents rest an alternative argument upon CERCLA. They claim that response costs are not "damages" under CERCLA's terms. Respondents point out a difference in terminology used in CERCLA. In 42 U.S.C.A. section 9607(a)(4)(A), a person is liable for "all costs of removal or remedial action...." In contrast, 42 U.S.C.A. section 9607(a)(4)(C) provides that a person is liable for "damages for injury to, destruction of, or loss of natural resources...." Respondents thus conclude that the language of the statute reflects congressional intent to differentiate between response costs and damages. Respondents reason that the government is not suing Farmland for damages under section 9607(a)(4)(C); rather, Farmland has assumed liability for response costs under sec-

tion 9607(a)(4)(A). Respondents rely upon *NEPACCO*, which stated that a narrow definition of the term "damages" is consistent with the statutory scheme of CERCLA which distinguishes "damages" from cleanup costs. 842 F.2d at 986.

Respondents incorrectly assume that CERCLA's definition of the term "damages" governs the interpretation of that term in an insurance policy. In Missouri, the interpretation of a policy term is determined by reference to the policy itself. When the policy does not include a technical definition of a term, this Court looks to a standard English language dictionary to find the ordinary meaning of the term. *Peters*, 853 S.W.2d at 303. The policies at issue do not refer to CERCLA for a definition of the term "damages." In fact, the CGL policies at issue were drafted prior to the enactment of CERCLA. *See AIU Ins. Co. v. Superior Court (FMC Corp.)*, 51 Cal.3d 807, 274 Cal. Rptr.820, 838, 799 P.2d 1253, 1271 (1990). The ordinary meaning of "damages" governs.

█ Respondents argue that because courts "consistently have held that no jury trial exists in an action to recover cleanup costs under CERCLA," an action for response costs under CERCLA is not an action for "damages," but is rather an equitable proceeding. Respondents cite the Seventh Amendment to the United States Constitution which provides that in "suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Respondents add that a jury trial must be available in actions that involve rights and remedies of the sort normally enforced in an action at law. *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). Respondents conclude that because a jury trial is consistently denied in these cases, an action for response costs under CERCLA must not be an action for damages.

Respondents' argument is merely a recharacterization of its argument that "damages" does not include equitable relief because CERCLA distinguishes "damages" and "equitable relief." As stated above, the fact that courts have determined that an action under CERCLA is an action for equitable relief

does not govern this Court's interpretation of the term "damages." The ordinary meaning of "damages" includes equitable relief. Respondents' argument, therefore, must fail.

This Court holds that under Missouri law, environmental response costs incurred pursuant to CERCLA and similar state laws are "damages" within the meaning of the policies Respondents issued to Farmland. The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

All concur.