# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

---

No. 04-2387

---

Pieper, Inc.,        *

           *

      Appellant,      *

           *    Appeal from the United States

    v.             *    District Court for the

           *    Southern District of Iowa.

Land O'Lakes Farmland Feed, LLC,   *

a Delaware limited liability corporation, *

           *

      Appellee.       *

---

Submitted: November 4, 2004
Filed: December 9, 2004

---

Before RILEY, MELLOY, and COLLOTON, Circuit Judges.

---

RILEY, Circuit Judge.

This appeal arises out of Pieper, Inc.'s (Pieper) breach of contract action against Land O'Lakes Farmland Feed, LLC (LOLFF). Pieper appeals the district court's[1] grant of summary judgment to LOLFF on its affirmative defense of frustration of purpose. Frustrating Pieper, we affirm.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

Pieper and LOLFF entered into a Weaned Pig Purchase Agreement (Agreement), in which LOLFF agreed to purchase weaner pigs, i.e., weaned piglets, from Pieper.  LOLFF intended to sell these pigs to third-party finishers, who would raise the pigs to market weight.  Farmland Industries, Inc. (Farmland) then would buy market hogs from third-party finishers under the terms of an existing contract between Farmland and Pieper.

Recital D of the Agreement explains LOLFF was to buy Pieper's weaner pigs only while Farmland purchased market hogs from third-party finishers:

> LOLFF will purchase such pigs from [Pieper] only while its Customers have the ability to market such pigs utilizing the Farmland America's Best Pork Marketing Agreement No. 8073 dated November 14, 2000 and originally assigned to Pieper, Inc.

In a deposition, Pieper's president, Michael Pieper (Mr. Pieper), testified the Agreement depended on Farmland's purchase of market hogs from third-party finishers:

> Q:    Farmland had to take the pigs in order for this whole arrangement to work[,] right?
> A:    Farmland had to take the pigs to make this whole agreement work.
> Q:    Because the hogs that were raised by [third-party finishers] had to go to Farmland.  Otherwise [Pieper] would be in trouble under [its] contract [with Farmland,] right?
> A:    Yes, that's right.  We required [LOLFF] to sell the pigs back to Farmland.
> Q:    And this deal was dependent upon [third-party finishers] being able to sell the market hogs to Farmland under Pieper's . . . contract [with Farmland,] right?
> A:    Yes.

Q:    Because the hogs had to go to Farmland[,] right?
A:    Yes, they had to be delivered to Farmland.

Farmland subsequently refused to buy market hogs from third-party finishers, declining to consent to an assignment of the Pieper and Farmland contract. Without the ability to sell weaner pigs to third-party finishers for sale to Farmland, LOLFF had no reason to buy pigs from Pieper. As a result, LOLFF advised Pieper "it will no longer purchase pigs from Pieper under the [Agreement], and such Agreement shall be terminated effective immediately."

Pieper filed suit against LOLFF, alleging LOLFF breached the Agreement by failing to buy Pieper's weaner pigs. In its answer, LOLFF asserted frustration of purpose as an affirmative defense. The parties filed cross motions for summary judgment. Pieper argued summary judgment was appropriate, because there was no genuine issue of material fact that LOLFF had breached the Agreement. LOLFF argued it was excused from performing, because its principal purpose behind the Agreement had been frustrated.

The district court first determined LOLFF had breached the Agreement; however, the district court later granted summary judgment to LOLFF on its affirmative defense of frustration of purpose. The district court relied on Recital D and Mr. Pieper's testimony to determine LOLFF's principal purpose in entering into the Agreement. The district court determined LOLFF's principal purpose was to sell Pieper's pigs to third-party finishers who then would sell market hogs to Farmland, and the principal purpose had been frustrated by Farmland's refusal to buy market hogs from third-party finishers.

On appeal, Pieper argues the district court erred in relying on extrinsic evidence to determine LOLFF's principal purpose in entering into the Agreement. Pieper contends (1) the Agreement is clear and unambiguous, (2) Recital D creates

no legal obligation, and (3) LOLFF's primary purpose was to sell feed to third parties purchasing weaner pigs LOLFF acquired from Pieper.[2]

## II. DISCUSSION

We review de novo a district court's grant of summary judgment. Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002). When considering a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party. Id. Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999).

Under Minnesota law,[3] frustration of purpose will excuse contract performance when: "(1) [t]he party's principal purpose in making the contract is frustrated; (2) without that party's fault; (3) by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made." City of Savage v. Formanek, 459 N.W.2d 173, 176 (Minn. Ct. App. 1990) (citation omitted). "The principal purpose: 'must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense.'" Id. (quoting Restatement (Second) of Contracts § 265, cmt. a (1981)).

Pieper argues the district court erred in relying on Recital D and on Mr. Pieper's testimony to determine LOLFF's principal purpose behind the Agreement. Pieper contends the district court should have relied on only the operable terms of the

---

[2]"Always remember the distinction between contribution and commitment. Take the matter of bacon and eggs. The chicken makes a contribution. The pig makes a commitment." John Mack Carter.

[3]The Agreement expressly provides that the Agreement, and any disputes arising thereunder, "shall be governed and construed in accordance with the laws of the State of Minnesota."

Agreement and should have found the principal purpose of the Agreement was to merely buy and sell pigs, with LOLFF supplying feed for third parties purchasing the weaner pigs LOLFF purchased from Pieper.

Pieper correctly notes that, under Minnesota law, recitals do not create legal obligations. Berg v. Berg, 275 N.W. 836, 841-42 (Minn. 1937). However, in this case, the district court did not create any legal obligation beyond the operative provisions of the Agreement. Instead, the district court relied on extrinsic evidence to determine LOLFF's principal purpose in entering into the Agreement.

Minnesota courts have not directly addressed the question of whether a court may rely on extrinsic evidence to determine a party's principal purpose. Without deciding the issue, the Minnesota Court of Appeals relied on extrinsic evidence to determine an employer's principal purpose in entering into an employment contract with an employee. See Nat'l Recruiters, Inc. v. Toro Co., 343 N.W.2d 704, 708 (Minn. Ct. App. 1984) (in applying the doctrine of frustration of purpose, the court considered testimony from a company manager explaining the company's purpose in hiring the individual was frustrated by elimination of the position).

The use of extrinsic evidence to show a party's principal purpose first was demonstrated in Krell v. Henry, [1903] 2 K.B. 740 (C.A.), the landmark case on frustration of purpose. In Krell, the court excused a prospective tenant from his obligation to pay for a room overlooking the King's coronation route, when the King became ill and the coronation parade was cancelled. Id. at 740-41. The contract involved in Krell did not refer explicitly to the coronation, but the court nonetheless inferred the principal purpose had been frustrated. Id. at 754. Krell thus set forth the principle that a contract's purpose may be inferred from surrounding circumstances:

> I think that you first have to ascertain, not necessarily from the terms of
> the contract, but, if required, from necessary inferences, drawn from

surrounding circumstances recognised by both contracting parties, what is the substance of the contract, and then to ask the question whether that substantial contract needs for its foundation the assumption of the existence of a particular state of things.

Id. at 749.

Relying on the principles enunciated in Krell, and the indirect authority from the Minnesota Court of Appeals in National Recruiters, Inc., we hold the district court did not err in considering extrinsic evidence to determine LOLFF's principal purpose in entering into the Agreement. Based on the undisputed evidence outside the operative provisions of the Agreement, no doubt exists that LOLFF entered into the Agreement to sell weaner pigs to third-party finishers, who then would sell market hogs to Farmland. Recital D explicitly states LOLFF's obligation to purchase weaner pigs from Pieper depended on Farmland's purchase of market hogs from third-party finishers. Even Mr. Pieper testified the Agreement assumed Farmland would purchase market hogs from third-party finishers, and the "deal was dependent upon [third-party finishers] being able to sell the market hogs to Farmland."

Having determined LOLFF's principal purpose in entering into the Agreement, we ask whether LOLFF's performance was excused under the doctrine of frustration of purpose. Our review of the record leads us to conclude, as a matter of law, LOLFF's purpose in buying pigs from Pieper was frustrated by Farmland's refusal to purchase market hogs from third-party finishers. Farmland's refusal completely frustrated the basic assumption upon which the Agreement was made and without which the Agreement makes no sense. Without the ability to sell the weaner pigs to third-party finishers for eventual sale to Farmland, LOLFF had no commercial reason to purchase pigs from Pieper. Additionally, Pieper did not present any evidence showing LOLFF was at fault with regard to Farmland's decision not to purchase market hogs from third-party finishers.

## III.  CONCLUSION

The district court properly granted summary judgment to LOLFF, and we affirm.

_____