# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1588

_____

State Farm Fire and Casualty Company,   *
  *
        Appellee,   *
  *   Appeal from the United States
    v.   *   District Court for the Western
  *   District of Missouri.
National Research Center for College   *
and University Admissions;   *
Donald Munce,   *
  *
        Appellants.   *

_____

Submitted: November 18, 2005
Filed:  March 13, 2006 (corrected 3/24/06)

_____

Before SMITH, HEANEY and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Appellants National Research Center for College and University Admissions, and its president Donald M. Munce (collectively "the NRCCUA"), survey high-school students and distribute the results to colleges and universities for the purposes of recruitment and admissions.

In 2001, the Federal Trade Commission began investigating the survey's funding, and the use of survey data for commercial purposes not disclosed to students.

The FTC notified the NRCCUA that it intended to seek all remedies available, including recovery of civil damages. In a consent decree, the FTC eventually ordered the NRCCUA to stop misrepresentations and to make clear and conspicuous disclosures. The NRCCUA made no money payments under the FTC order.

Several state attorneys general then investigated the NRCCUA for violations of their consumer-protection laws, initially requesting only documents. Eventually, the Iowa Attorney General, acting also for 26 other states, demanded that the NRCCUA pay $300,000 as part of an Assurance of Voluntary Compliance. The Missouri Attorney General, after a separate investigation, requested that the NRCCUA pay $20,000 in another Assurance. In addition to these sums, the NRCCUA incurred its own attorney's fees responding to the states and the FTC.

The NRCCUA has a business liability policy from appellee State Farm Fire and Casualty Company. The Policy states:

> [State Farm] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . personal injury or advertising injury to which this insurance applies. . . .
> . . . .
> [State Farm] will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent.

The Policy does not define the term "damages."

State Farm asked the district court to declare that the Policy does not require it to reimburse, defend, or indemnify the NRCCUA for any payment in response to the

FTC and the states. The NRCCUA counterclaimed, seeking a declaration that the Policy requires State Farm to pay and indemnify it for all costs and expenses incurred in defending those complaints. The court granted summary judgment for State Farm, finding that the claims against the NRCCUA were not for "damages" under the Policy. The NRCCUA appeals under 28 U.S.C. § 1291.

This court reviews de novo the district court's grant of summary judgment. *See* **Pieper, Inc. v. Land O'Lakes Farmland Feed, LLC**, 390 F.3d 1062, 1065 (8th Cir. 2004). The parties stipulated to the facts, both moved for summary judgment, and agree there is no genuine issue of material fact. Summary judgment is therefore proper if either party is entitled to judgment as a matter of law. *See id*.; **Fed. R. Civ. P.** 56(c). The district court's interpretation of a provision in an insurance policy is reviewed de novo. **Pac. Ins. Co. v. Burnet Title, Inc.**, 380 F.3d 1061, 1064 (8th Cir. 2004). This court applies Missouri law in this diversity case. **Id.**

I.

State Farm argues that the payments sought are not covered under the Policy because they are not caused by "personal injury" or "advertising injury." The Policy defines both terms to include "oral or written publication of material that violates a person's right of privacy." The Policy does not define the term "privacy." According to State Farm, no relief was sought from the NRCCUA for violation of privacy.

To determine coverage, this court compares the underlying allegations to the language of the insurance policy. *See* **Reliance Ins. Co. v. Shenandoah South, Inc.**, 81 F.3d 789, 791-92 (8th Cir. 1996), *citing* **Benningfield v. Avemco Ins. Co.**, 561 S.W.2d 736 (Mo. Ct. App. 1978). The first step is to detail the allegations of the FTC and the state attorneys general. In its main letter to the NRCCUA's attorney, the FTC

said that it believed the "NRCCUA and its principal, Mr. Munce, violated Section 5 of the FTC Act by misrepresenting how personal information collected from high-school students though the [Survey] would be used and how the Survey was funded." Enclosed was a draft complaint that stated:

> In truth and in fact:
> A. Information collected from high school students through the Survey is shared not only with colleges, universities, and other entities provided educational-related services, but also with commercial entities for marketing purposes.
> B. The survey is not funded solely by educational institutions, but also receives substantial funding from ASL and ECI for commercial purposes.
> Therefore, the representations set forth in [the Survey] were, and are, false and misleading.

The Missouri Attorney General alleged in its Assurance of Voluntary Compliance that the NRCCUA has released personally identifiable information by selling it to commercial third-parties not disclosed to the students. Similarly, the Iowa Attorney General alleged that the NRCCUA, in violation of its own privacy statement, shared students' information with commercial entities.

This court agrees with the district court that the FTC and the state attorneys general allege a personal injury for invasion of privacy. Webster's Third New International Dictionary (1966) defines "privacy" as "isolation, seclusion, or freedom from unauthorized oversight or observation." This ordinary, lay definition encompasses the investigating entities' allegations. *See Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. banc 1997); *cf. Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (unsolicited faxes are "invasions of privacy). Gathering and disseminating personal information beyond disclosed terms arguably violates "privacy," as evidenced by the "Privacy Statement" at the bottom of the NRCCUA's surveys. State Farm objects at

length that the gravamen of the investigating entities' complaints is "misrepresentations," but the Policy covers occurrences which *result in* personal injury or advertising injury. The claims against the NRCCUA allege such occurrences.

## II.

The district court ruled that State Farm had no duty to defend because the payments sought in this case are fines and penalties, and thus not do qualify as "damages" under the policy. It relied on the Missouri Supreme Court's decision in *Farmland Industries, Inc. v. Republic Insurance Co.*, which states that "fines" and "penalties" are not "damages." *See Farmland*, 941 S.W.2d at 510-11.

To determine coverage, this court compares the allegations in the underlying claims to the language of the insurance policy. *See Reliance Ins. Co.*, 81 F.3d at 791-92, *citing Benningfield*, 561 S.W.2d at 736. Uncertainty about coverage is resolved in favor of the insured, here the NRCCUA. *See Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir. 1981).

## A.

In its Counterclaim in the district court, the NRCCUA stated: "The FTC informed Defendants [NRCUCA] of its intent to seek all remedies available to it including recovery of civil *damages* in amounts necessary to *compensate* for the private information allegedly obtained by Defendants through alleged deceptive advertising practices." (emphasis added). In its Reply to the Counterclaim, State Farm admitted this fact. State Farm cannot maintain a different position now. *See Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990)

("[a]dmissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended"), *quoting Scott v. Commissioner*, 117 F.2d 36, 40 (8th Cir. 1941).[1]

In terms of its legal position, State Farm contends that "damages" do not include the kinds of payments sought by regulatory agencies from regulated businesses. State Farm misses the central holding of the *Farmland* case: the term "damages" is broad and includes equitable relief seeking money. In *Farmland*, the insured entered into consent agreements with the EPA to clean up hazardous substances. Insurance coverage turned on the undefined term "damages." The Missouri Supreme Court held:

> Reference to standard English language dictionaries reveals that "damages" means "the estimated reparation in money for detriment or injury sustained." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 571 (1961). Webster's also defines "damages" as "compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." *Id.* These definitions of "damages," those that a layperson would reasonably understand "damages" to mean, are broad and inclusive. The ordinary meaning of damages, therefore, includes environmental response costs required by the government.

*Id.* at 508. The court explained that "damages" includes equitable relief:

[1]This court is aware that the parties stipulated that in "the course of negotiating the Consent Order" the FTC did not demand any payment from the NRCCUA. In view of the Counterclaim and Reply, the stipulated fact must be limited to the process of negotiation, and not to the FTC's intent to seek all remedies including civil damages. *See Benningfield*, 561 S.W.2d at 737 ("Evaluation of this obligation [to defend] depends not on resolution of controverted facts under which the claim is advanced but on the insuring agreements and the allegations of the claimant, whether groundless or valid.")

Respondents nevertheless argue that "damages" does not include equitable relief even if "damages" is given its ordinary meaning. Respondents contend that the government has ordered that Farmland undertake specific actions in this case, such as investigating, planning, and cleaning up pollution. Respondents argue that such actions are not the "money equivalent for detriment or injuries sustained;" therefore, they are not "damages."

Respondents' argument fails. The definitions of "damages" do not distinguish between legal damages and equitable relief. Farmland's cost of undertaking the actions required by the government under CERCLA or similar state laws are "damages" within the ordinary meaning of the term. In other words, the equitable relief at issue is a cost that Farmland is legally obligated to pay as compensation or satisfaction for a wrong or injury.

*Id.* at 508-509.

State Farm tries to distinguish *Farmland*, arguing that in this case there is no "compensable injury, *i.e.*, injury of a type that might give rise to a damage payment within the meaning of *Farmland*," and that the payments will not be used "to compensate an aggrieved party for past wrongs." State Farm emphasizes the fact that no specific person has complained or been identified.

*Farmland* controls this case. The damages there, for environmental response costs required by the government, benefitted the public at large, not an identifiable victim. Yet, the Missouri Supreme Court held that the environmental response costs were "damages," or "compensation or satisfaction for a wrong or injury." *Id.* at 509. Equally in this case, the civil damages sought by the FTC would benefit the public at large, and thus are "damages" under the Policy.

## B.

The initial requests for documents from the attorneys general do not mention payments at all, and thus do not trigger the duty to defend under the Policy. The Assurances of Voluntary Compliance, in contrast, are claims seeking money payments. This issue is whether these money payments are "damages" under the Policy.

As for the sums demanded by the Missouri Attorney General, the NRCCUA is to pay $5,000 to the "Missouri Merchandising Practices Revolving Fund for use by the Attorney General to reimburse attorney fees and other costs of the investigation leading to this Assurance and for funding for consumer education, investigations and litigation as allowed by law."

Missouri courts have held that payments to the Revolving Fund for the Attorney General's investigatory cost, attorneys fees and incidental expenses are "clearly punitive in nature" and are penalties and forfeitures. *See State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65-66 (Mo. Ct. App. 1987); *cf. State v. Polley*, 2 S.W.3d 887, 894-95 (Mo. Ct. App. 1999) (reimbursement of "the Attorney General's costs of investigation and prosecution" discussed as "penalties"). The Merchandising Practices Act is remedial as it relates to restitution and injunctive relief, but penal as it relates to claims for investigation and prosecution costs. *See State ex rel. Webster v. Myers*, 779 S.W.2d 286, 289-90 (Mo. Ct. App. 1989). True, Missouri courts have not addressed whether payments to the Revolving Fund for "consumer education" are remedies or penalties. However, "consumer education" appears more like the items the Missouri courts label as "penalties" than the "restitution and injunctive relief" that are classified as remedies.

The payments demanded by the Iowa Attorney General (on behalf of 26 other states) are stipulated to be for "attorneys' fees and investigative costs, consumer education, litigation, public protection or local consumer aid funds." These purposes are nearly identical as those of the Missouri Attorney General. The parties discuss authority from many jurisdictions addressing whether the payments to Iowa (and the other states) are "damages." However, in this appeal from a Missouri forum, Missouri law governs the interpretation of a policy issued there to a Missouri corporation, with its principal place of business and principal risk in the state. *See Highwoods Properties, Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005), *citing Superior Equip. Co., Inc. v. Maryland Cas. Co.*, 986 S.W.2d 477, 480-81 (Mo. Ct. App. 1998). The analysis above of the payments to the Missouri Revolving Fund dictates that similar payments to other states are not covered as "damages" under the Policy.

The Missouri Attorney General, in the Assurance of Voluntary Compliance, also requests payment of $15,000 to the "Custodian of the Public School Fund." The Assurance does not further detail the payment. True, the public school funds receive all fines and penalties for violations of the penal laws. *See Mo. Const., art. IX, §§ 5, 7*; *Reorganized School Dist. No. 7 Lafayette County v. Douthit*, 799 S.W.2d 591, 593 (Mo. banc 1990). *See generally* §§ 54.160, 166.131 Mo. Rev. Stat. (2000) (establishing county funds). However, the facts in the Assurance show that the personal injury was to high-school students, and that the Missouri Attorney General has information that the NRCCUA has released personally identifiable information by selling it to commercial third-parties not disclosed to the students. The payment to the public school fund is compensation or satisfaction for that injury. Under *Farmland*, the payment to the Public School Fund is "damages" under the Policy.

## III.

Finally, as the NRCCUA first informed State Farm of the allegations one month after the proposed consent agreement was reached, State Farm asserts that the NRCCUA failed to notify it promptly of the claims at issue. The Policy states that the NRCCUA must provide "prompt written notice" of any claim or suit. The Policy also provides: "Except at their own cost, no insureds will voluntarily make a payment, assume any obligation or incur any expense . . . without [State Farm's] consent."

Under Missouri law, however**,** an insurer cannot deny a claim based on the insured's failure to provide timely notice unless the insurer proves "actual prejudice resulting from the untimely notice." ***Weaver v. State Farm Mut. Auto. Ins. Co.***, 936 S.W.2d 818 (Mo. banc. 1997). Because State Farm has not alleged prejudice from any delay in providing notice, it cannot deny coverage on that basis.

## IV.

In sum, because the FTC sought all remedies available—including civil damages—State Farm had a duty to defend against the FTC's claims. The payments sought by the Iowa Attorney General (on behalf of the other states) are not covered as "damages" under the Policy. State Farm had no duty to defend against that Assurance of Voluntary Compliance.

The payments to the Revolving Fund requested by the Missouri Attorney General are not "damages," but the payment to the Public School Fund is "damages" under the Policy. Under Missouri law, a duty to defend arises even though claims beyond coverage are present with potentially insured claims. *See **Truck Ins. Exchange v. Prairie Framing, LLC***, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005), *citing*

*Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477, 482 (Mo. Ct. App. 1998). Therefore, State Farm had a duty to defend against the Assurance presented by the Missouri Attorney General.

The district court's judgment is affirmed in part, reversed in part, and the case remanded.

_____