**MID–CONTINENT CASUALTY COMPANY, Plaintiff,**

v.

**THIRD COAST PACKAGING COMPANY, INC., Defendant.**

**No. CIV.A. H–02–4508.**

United States District Court, S.D. Texas, Houston Division.

Oct. 27, 2004.

Brian Lynn Blakeley, Brian L. Blakeley and Associates, San Antonio, TX, for Plaintiff—Mid–Continent Casualty Company.

Jack M. McKinley—Counsel for Defendant, Ramey Chandler, Houston, TX, for Defendants—Third Coast Packaging Company, Inc.

## ORDER

HITTNER, District Judge.

Pending before the Court is Mid–Continent Casualty Company's First Amended Motion for Summary Judgment. Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted in part and denied in part.

## BACKGROUND

On April 30, 2002, a fire occurred at a Third Coast Packaging Company, Inc. ("Third Coast") facility, causing damage to the facility and surrounding property. Third Coast incurred various expenses fighting the fire, monitoring the site, and performing site clean-up. In the aftermath of the fire, a number of lawsuits were initiated against Third Coast for property damage resulting from the fire. Other lawsuits were brought against Third Coast seeking payment for services rendered to Third Coast during the fire and thereafter. In the captioned matter, Mid–Continent Casualty Company ("Mid–Continent"), Third Coast's commercial general liability carrier, seeks a declaratory judgment that it has no duty to defend Third Coast Packaging Company, Inc., Third Coast Industries, and Third Coast Terminals, Inc. (collectively, "Third Coast") and it has no duty to reimburse Third Coast for expenses incurred by various entities in fighting the fire, cleaning up after the fire, and monitoring potential pollution after the fire. Third Coast counterclaims for breach of duty under article 21.21 of the Texas Insurance Code and for breach of contract for Mid–Continent's mishandling of various claims associated with the fire.

In its motion for summary judgment, Mid–Continent seeks a declaration that, under commercial general liability policy number 04–GL–000055812 ("policy"), Mid–

Continent has no duty to defend or cover Third Coast in certain lawsuits related to the fire.[1] Some of the underlying actions seek to recover for damages to property located on Third Coast's premises. Other actions, for which Mid–Continent seeks declaration that it has no duty to defend or indemnify, involve Third Coast's payment for services undertaken by various third parties for fighting the fire, cleaning up after the fire, and monitoring the property after the fire. In addition to the pending lawsuits, Mid–Continent asks the Court to declare that it need not reimburse Third Coast for voluntary payments related to fighting the fire, cleaning up after the fire, and monitoring the property after the fire. Essentially, Mid–Continent asks the Court to determine that the expenses incurred in fighting the fire, cleaning up after the fire, and monitoring the scene of the fire to prevent pollution are excluded under the policy and/or fall outside the scope of the policy. Finally, Mid–Continent seeks summary judgment on Third Coast's counterclaim for violation of article 21.21 of the Texas Insurance Code.

Third Coast responds by seeking a declaration that coverage applies to the *Williams Fire, Plastipak, Crenshaw, Gar-ner, Evans,* and *Greenwich* lawsuits.[2] In the *Williams Fire, Crenshaw, and Garner* actions, Third Coast seeks coverage because the lawsuits relate to expenditures undertaken to prevent harm to third parties' property. Third Coast also seeks coverage in the *Evans, Greenwich,* and *Plastipak* actions because they all assert negligence claims for destroyed property. Third Coast avers Mid–Continent owes it a duty to reimburse for expenditures related to fighting the fire, cleaning up after the fire, and monitoring the scene of the fire to prevent pollution.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323,

1. Mid–Continent seeks declaration that it has no duty to defend the following lawsuits: *Williams Fire & Hazard Control, Inc. v. Third Coast Indus., Inc., Third Coast Terminals, Inc. & Third Coast Packaging Co., Inc.,* No. 21738*JG02 (239th Dist. Ct., Brazoria County, Tex.); *Crenshaw Enters. LTD v. Third Coast Indus.,* No. 1/1 S0003721 (Small Claims Court, Jefferson County, Tex.); *Plastipak Packaging, Inc. v. Third Coast Packaging Co., Inc., et al.,* No.2002–63821 ( 270th Dist. Ct., Harris County, Tex.); *Garner Envtl. Serv., Inc. v. Third Coast Terminals, Inc.,* No.2002–121837 (270th Dist. Ct., Harris County, Tex.); *Evans Houston Corp. v. Third Coast Indus., Inc., Third Coast Terminals, Inc. & Third Coast Packaging Co., Inc.,* No.2003–24234 (280th Dist. Ct., Harris County, Tex.); *Torco Int'l Corp. v. Third Coast Indus., Inc., Third Coast Terminals, Inc. & Third Coast Packaging*

*Co., Inc.,* No. 27854 (149th Dist. Ct., Brazoria County, Tex.); *Greenwich Ins. Co. as Subrogee of Dupre Transp., L.L.C. & Dupre Transp., L.L.C. v. Third Coast Packaging Co., Inc. & Third Coast Indus., Inc.,* No.2004–01446 (164th Dist. Ct., Harris County, Tex.); and *Third Coast Packaging Co., Inc. v. Tex–Chem Group Int'l, L.L.C.,* No. 27,672 (149th Dist. Ct., Brazoria County, Tex.).

2. Third Coast does not seek coverage for the current allegations in the *Torco Int'l Corp. v. Third Coast Indus., Inc., Third Coast Terminals, Inc. & Third Coast Packaging Co., Inc.,* No. 27854 (149th Dist. Ct., Brazoria County, Tex.) or *Third Coast Packaging Co., Inc. v. Tex–Chem Group Int'l, L.L.C.,* No. 27,672 (149th Dist. Ct., Brazoria County, Tex.) actions.

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998). It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n. 30 (5th Cir.1992).

### LAW AND ANALYSIS

In the instant action, Mid–Continent seeks a declaration that it owes no duty to Third Coast regarding various third party lawsuits and voluntary expenditures. The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2000). The Court must resolve the meaning of various disputed terms in the commercial general liability policy that governs the parties' relationship, which was in effect when the Third Coast fire occurred on April 30, 2002.

### A. The Policy

Generally, the policy covers third party "bodily injury" or "property damage" caused by an "occurrence." The policy specifically provides "[Mid–Continent] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The policy defines "property damage" as:

a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

### B. Exclusions

A number of exclusions exist under the policy. For example, no coverage exists for "bodily injury" or "property damage" incurred by Third Coast on its own property. The policy excludes "property damage" to "personal property in the care, custody or control of the insured." The

policy further excludes "bodily injury" or "property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration or escape of 'pollutants' " and excludes:

[a]ny loss, cost or expense arising out of any

(a) [r]equest, demand, order or statutory or regulatory requirement that any insured or others test for monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, 'pollutants'; or

(b) [c]laim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, 'pollutants.' [3]

The only exception to this exclusion is " 'property damage' that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement."

Finally, the policy provides "no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without [Mid–Continent's] consent." The policy has a $5000 per claim deductible. Using this information, the Court will analyze the areas for which Mid–Continent seeks declaratory relief.

## C. *The Parties' Contentions*

 First, the parties dispute whether Mid–Continent must defend or indemnify Third Coast in a number of lawsuits asserting damage to property on Third Coast's premises at the time of the fire. Under Texas law, an insurer has no duty to defend a suit against an insured if the petition does not allege facts within the

scope of coverage. *Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). The duty to defend is determined by an examination of the allegations in the pleadings and in the insurance policy itself. *Id.* Texas courts give liberal interpretation to the allegations in the petition, and doubt over whether allegations invoke coverage is resolved in favor of the insured. *Id.* Similarly, "the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex.1997). Generally, there can be no duty to indemnify if there is no duty to defend. *State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 889 (Tex.App.—Dallas 2001, pet. denied). "[A]n insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir.1996).

However, Texas law also recognizes that when the underlying petition "alleges facts that, *prima facie*, exclude the insured from coverage, [then] the insurer has no duty to defend." *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir.1994) (quoting *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 677 (Tex.App.-Houston [14th Dist.] 1993, writ denied)). Stated differently, "when the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claims within an exclusion from coverage, there is no duty to defend." *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir.1994) (citing *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787, 788 (Tex.1982)).

 The *Evans, Greenwich,* and *Plastipak* actions all involve damage to trailers

---

**3.** "Pollutants" include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

left on Third Coast's premises. In *Evans*, the underlying plaintiffs seek $90,000 for trailers left on Third Coast's premises that were damaged by the fire. Specifically, the underlying plaintiff seeks damages for destruction of five trailers "in the possession" of Mid–Continent and asserts theories of negligence and breach of bailment duty. An examination of the *Evans* petition evinces that both claims allege Third Coast was in possession of the trailers at the time they were damaged. Various Texas statutes, both civil and criminal, define "possession" as "actual care, custody, control, or management." *See, e.g.*, TEX. HEALTH & SAFETY CODE ANN. 481.002(38) (Vernon Supp.2004–05); TEX. PEN. CODE ANN. § 1.07(a)(39) (Vernon Supp.2004–05). Thus, no duty to defend exists in *Evans* because possession of the trailers, if proven, would place the claims for the trailer within the "care, custody, or control" exclusion of the policy. *See McManus*, 633 S.W.2d at 788. Therefore, Mid–Continent has no duty to defend the underlying *Evans* action.

In the underlying *Greenwich* litigation, the plaintiff asserts negligence and seeks damages for destruction of a trailer left on Third Coast's loading dock. The state court petition alleges, "[a]t the time of the fire, the subject trailer was under the Defendants' care, custody and control and was physically present at the 18410 Clover Lane facility." Therefore, the *Greenwich* action falls within the "care, custody, or control" exclusion because the petition expressly alleges custody and control which, if proved, would place the suit within the exclusion. *See McManus*, 633 S.W.2d at 788. Therefore, Mid–Continent has no duty to defend the *Greenwich* action.

The underlying *Plastipak* litigation asserts $1,137.60 for fire related damages to a trailer left on Third Coast's dock.[4] Like *Greenwich*, the *Plastipak* petition alleges that the trailer was in Third Coast's "care, custody and control." Accordingly, Mid–Continent owes no duty to defend the *Plastipak* litigation.

In addition to the above mentioned cases, Mid–Continent seeks a declaration that it owes no duty to Third Coast with regard to the *Williams Fire, Crenshaw*, and *Garner* actions, which all seek to collect for payments owed stemming from activities associated with the fire and its aftermath. The *Williams Fire* claim seeks to collect $272,342.50, plus fees and costs, for activities undertaken to fight the Third Coast fire. *Crenshaw* involves a claim against Third Coast to recover $1,575.04 for pump rental. The *Garner* action seeks $75,257.44, plus fees and costs, associated with preventing or mitigating discharge of fire debris. In addition to the pending cases, Mid–Continent also seeks a declaration that it owes no duty to reimburse Third Coast for any payments associated with fighting the fire, cleaning up after the fire, premises security, and pollution monitoring. Third Coast counters that coverage exists for these expenditures and argues the expenses were a result of its attempt to prevent harm, mitigate damages, and manage the fire, which necessarily constitute "damages" within the meaning of the policy.

One point of contention between the parties is how "damages," as it is used in the policy, should be construed. The parties agree there is a split among courts throughout the United States as to whether environmental clean-up costs can consti-

---

4. Third Coast does not dispute that the claims in the *Plastipak* suit relating to packaging, bottles, finished goods, and raw materials are outside the scope of policy coverage. Thus, the Court determines Mid–Continent has no duty with regard to these aspects of the underlying *Plastipak* action.

tute "damages" within an insurance policy. *See, e.g., Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 594 S.E.2d 455, 459 (2004) (noting the split in authority throughout the United States). The parties further agree that Texas courts have not ruled on this precise issue.

A minority of state courts have adopted the view that "damages" under an insurance policy similar to the one at issue do not include environmental clean-up costs. *Contra Helena Chem. Co.*, 594 S.E.2d at 459 (stating that a majority of jurisdictions have recognized "damages" to include environmental costs). The jurisdictions adopting such interpretation appear to analyze the term "damages" as including monetary relief obtained through the judicial process to the exclusion of equitable or voluntary payments. *See, e.g., Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 103 Cal.Rptr.2d 672, 16 P.3d 94 (2001) (finding duty to indemnify for damages is limited to "money ordered by a court"); *Patrons Oxford Mut. Ins. Co. v. Marois*, 573 A.2d 16 (Me. 1990) (stating expenditures that one is not legally obligated to make are not "damages," even though they may be "substantial and may effectively alleviate or prevent property damage to others").

The opposing view finds environmental clean-up costs can fall within the scope of the term "damages."[5] *See, e.g., Helena Chem. Co.*, 594 S.E.2d at 459 (finding such coverage and citing cases from Illinois, Minnesota, New Hampshire, North Carolina, and Washington); *see also Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505 (Mo.1997) (ordinary meaning of "damages" includes equitable relief encompassing response costs incurred pursuant to state and federal statute); *Minn. Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175 (Minn.1990) (finding "damages" in policy to include reimbursement for clean-up costs undertaken at the direction of the state).

■ Under Texas law, when a term in an insurance policy is ambiguous and open to more than one interpretation, the term is construed against the insurer. *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex.1998). A policy is not ambiguous, however, if it can be given a definite or certain legal meaning. *Id.; Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). The determination of whether a contract is ambiguous is a question of law for the court to resolve by looking at the contract in its entirety. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589.

The instant policy provides that Mid–Continent "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or property damage' to which this insurance applies." The term "damages" is not defined by the policy. Although the above-cited decisions from other jurisdictions

---

**5.** Even those states that have adopted "damages" as including clean-up costs have adopted various interpretations of the scope of "damages." *See Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 788 F.Supp. 846, 852 (D.N.J.1992); *Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 618 A.2d 777, 785 (1992). For example, some jurisdictions adopt a view of "damages" as encompassing clean up costs on the insured's own property despite an "owned property exclusion" that precludes coverage for damage to insured's own property, when such measures are designed to prevent the spread of contamination to surrounding third party properties. *See Chem. Leaman Tank Lines, Inc.*, 788 F.Supp. at 852.

Other courts expressly refuse to include containment costs within the term damages. *See Coakley*, 618 A.2d at 785 (finding that expenditures related to containment of hazardous wastes were not "damages" within the meaning of the policy.)

provide some guidance on interpreting the term "damages," none of the cases involve policies similar to the instant case. For example, absent from these opinions is a discussion of a pollution exclusion like the one at bar. *See Chem. Leaman Tank Lines, Inc.*, 788 F.Supp. at 851–52; *Helena Chem. Co.*, 594 S.E.2d at 460; *Farmland Indus., Inc.*, 941 S.W.2d at 507, 511; *Coakley*, 618 A.2d at 785–86; *Minn. Mining & Mfg. Co.*, 457 N.W.2d at 183–84. Here, the pollution exclusion is broad, covers most types of pollution, and excludes payments for government ordered clean-up costs.

Looking at the entire policy, the Court concludes that the term "damages" is unambiguous. The Court determines the term "damages," as it is used in the policy, neither encompasses costs associated with fighting the fire, cleaning up after the fire, premises security, and pollution monitoring, nor does it include the payments sought in the *Williams Fire, Crenshaw,* or *Garner* actions.

■ Moreover, the Court determines the policy terms make clear that coverage does not apply to damages related to pollution or environmental clean-up, even at the directive of government agencies. The policy language itself derails any argument that environmental clean-up costs could constitute "damages." Hence, the policy is clearly distinguishable from those cases holding "damages" to encompass environmental clean-up costs. *See Chem. Leaman Tank Lines, Inc.*, 788 F.Supp. at 852; *Helena Chem. Co.*, 594. S.E.2d at 460; *Farmland Indus., Inc.*, 941 S.W.2d at 512; *Coakley*, 618 A.2d at 785; *Minn. Mining & Mfg. Co.*, 457 N.W.2d at 181–82. The plain language of the policy dictates that any expenditures associated with cleaning up after the fire, monitoring potential pollution, and the security of Third Coast property fall outside the scope of coverage. Mid–Continent has no duty with regard to

these payments. Accordingly, the *Crenshaw* and *Garner* actions fall outside the sphere of coverage because they seek to collect payments for activities outside the scope of coverage.

■ The final area for which Mid–Continent seeks a declaration that it has no duty to defend can properly be characterized as fire containment. The *Williams Fire* case falls within this category of preventative or containment measures, as does any other payment associated with fighting the fire on Third Coast's property, and the Court determines the policy does not provide coverage for such expenditures. While the policy allows coverage for third party property damage stemming from "heat, smoke or fumes from a 'hostile fire,' " the policy expressly excludes damages to Third Coast's property. The Court is unwilling to read the policy to equate "damages" with firefighting costs on Third Coast's property that may have assisted in preventing the spread of the fire. *See Coakley*, 618 A.2d at 785 (indicating containment costs are not "damages"). Thus, any expenditures related to controlling the fire on Third Coast's premises were necessarily preventative measures and/or containment costs not covered under the terms of the policy.

Finally, Mid–Continent asks the Court to issue summary judgment in its favor on Third Coast's counterclaim for violation of article 21.21 of the Texas Insurance Code. After examining the parties briefs on this matter, the Court determines there exist unresolved material issues of fact and granting summary judgment on this matter would be inappropriate at this time. Accordingly, the Court

ORDERS that, under commercial general liability policy 04–GL–000055812, Mid–Continent has no duty to Third Coast with regard to costs or expenses incurred in fighting the fire on Third Coast's premises, cleaning up after the fire, premises securi-

ty of Third Coast property, or for monitoring potential pollution. The Court further

ORDERS that, under commercial general liability policy 04–GL–000055812, Mid–Continent has no duty to defend or indemnify Third Coast in the following actions: *Williams Fire & Hazard Control, Inc. v. Third Coast Indus., Inc., Third Coast Terminals, Inc., & Third Coast Packaging Co., Inc.*, No. 21738*JG02 (239th Dist. Ct., Brazoria County, Tex.); *Crenshaw Enters. LTD v. Third Coast Indus.*, No. 1/1 S0003721 (Small Claims Court, Jefferson County, Tex.); *Plastipak Packaging, Inc. v. Third Coast Packaging Co., Inc., et al.*, No.2002–63821 (270th Dist. Ct., Harris County, Tex.); *Garner Envtl. Serv., Inc. v. Third Coast Terminals, Inc.*, No.2002–121837 (270th Dist. Ct., Harris County, Tex.); *Evans Houston Corp. v. Third Coast Indus., Inc., Third Coast Terminals, Inc. & Third Coast Packaging Co., Inc.*, No.2003–24234 (280th Dist. Ct., Harris County, Tex.); *Torco Int'l Corp. v. Third Coast Indus., Inc., Third Coast Terminals, Inc., & Third Coast Packaging Co., Inc.*, No. 27854 (149th Dist. Ct., Brazoria County, Tex.); *Greenwich Ins. Co. as Subrogee of Dupre Transp., L.L.C. & Dupre Transp., L.L.C. v. Third Coast Packaging Co., Inc. & Third Coast Indus., Inc.*, No.2004–01446 (164th Dist. Ct., Harris County, Tex.); and *Third Coast Packaging Co., Inc. v. Tex–Chem Group Int'l, L.L.C.*, No. 27,672 (149th Dist. Ct., Brazoria County, Tex.). The Court further

ORDERS Mid–Continent's motion for summary judgment on Third Coast's claim for violation of article 21.21 of the Texas Insurance Code is DENIED.[6]

---

6. Therefore, the remaining issues to be determined by the Court are the viability of Third Coast's claims for breach of contract and for violation of article 21.21 of the Texas Insurance Code.