STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-529

RICHARD GRICH,

        Plaintiff

    v.

ANTHEM HEALTH PLANS OF MAINE,
INC.,

        Defendant

ORDER ON
MOTION TO DISMISS

DONALD L. GARBRECHT
LAW LIBRARY

AUG 2 0 2007

Before the Court is Defendant Anthem Health Plans of Maine, Inc.'s ("Defendant") motion to dismiss Plaintiff Richard Grich's ("Plaintiff") claim for punitive damages and Count III of his complaint.

## BACKGROUND

The facts as alleged by Plaintiff are as follows. Plaintiff suffers from severe problems with a disc in his lower back. In order to treat these problems, Plaintiff's doctor recommended that he undergo artificial disc replacement surgery. Plaintiff has health insurance policy coverage pursuant to a contract with Defendant. In May 2006, Defendant notified Plaintiff that it would not cover the recommended surgery.

Subsequent to Defendant's denial of coverage, Plaintiff timely filed a three count complaint commencing the present lawsuit. The complaint alleges Defendant's violation of Maine's Unfair Claims Settlement Practices Act ("UCSPA"), 24-A M.R.S.A. § 2436-A, (Count I), violation of the Carrier Liability Statute portion of Maine's Health Plan

1

Improvement Act ("HPIA"), 24-A M.R.S.A. § 4313, (Count II) and Breach of Contract (Count III). Pursuant to Count I, Plaintiff demands punitive damages, in addition to compensatory damages, attorney's fees, costs and interest.[1] Defendant's present motion seeks dismissal of Plaintiff's claim for punitive damages under Count I as well as dismissal of Count III in its entirety.

## STANDARD OF REVIEW

On a motion to dismiss, a court must view the facts alleged in the complaint as if they were admitted. *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 10, 871 A.2d 1208, 1213. A court then examines the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. *Id.* ¶ 10, 871 A.2d at 1213-14.

## DISCUSSION

### I. Punitive Damages under UCSPA

Count I of Plaintiff's complaint alleges Defendant's violation of UCSPA, and seeks punitive damages. UCSPA provides that a person injured by his insurer's violation of its provisions "may bring a civil action and recover damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month." 24-A M.R.S.A. § 2436-A(13)

#### A. Ambiguous v. Unambiguous

---

[1] Plaintiff does not ask for punitive damages in connection with either Count II or III.

A threshold issue in determining whether Count I of Plaintiff's complaint can survive the present motion is whether Section 2436-A(13) is unambiguous regarding the availability of punitive damages. Although there exist cases from other jurisdictions holding that the word "damages" within a statute is unambiguous, those cases are distinguishable. *See Anderson v. United Parcel Service.* 96 F.3d 903,908 (Utah 2004) (interpreting as unambiguous the word "damages" within a section of the Utah constitution addressing the legislature's power to limit recovery of damages against a third party as opposed to against an employer); *Mid-Continent Cas. Co. v. Third Coast Packaging Co., Inc.* 342 F. Supp. 2d 626,633 (S.D. Tex. 2004) (ruling that an insurance policy covering liability for "damages" related to bodily injuries or property damage unambiguously does not cover costs associated with fighting a fire, cleaning up after a fire, premises security or pollution monitoring). Those cases did not hold that the word "damages" unambiguously includes punitive damages. Rather, they stand only for the proposition that, as relates to the specific issues addressed, the word "damages" was unambiguous.

Further, although the Legislature specifically defined "damages" in 24-A M.R.S.A. § 4313(9)(C), the Carrier Liability Statute, as excluding punitive damages, that fact by itself does not mean that its failure to explicitly do so in Section 2436-A has significance. The Carrier Liability Statute also specifically provides that "[a]ctual or compensatory damages may be awarded." 24-A M.R.S.A. § 4313(9)(A). The failure to include such an explicit provision in UCSPA does not lead to the conclusion that a party cannot recover actual or compensatory damages under that section. The Legislature's

3

decision to carve punitive damages out of the possible awards under the Carrier Liability Statute simply has no bearing on whether "damages" has an unambiguous meaning in UCSPA.[2]

The fact that the word "damages" in UCSPA is ambiguous is further reinforced by a recent Superior Court (Cole, J.) decision directly addressing whether punitive damages are available under UCSPA. *Anderson v. CIGNA Healthcare of Maine*, 2005 Me. Super. LEXIS 139, *11-*12 (October 27, 2005). In that case, without directly addressing whether the word "damages" is ambiguous, the court held that punitive damages are unavailable. *Id.* at *12. The court, however, conducted an analysis of whether strict construction or a more liberal one was appropriate in interpreting "damages." *Id.* at *11. Such an analysis was only necessary if the court believed "damages" was ambiguous. As a result, a finding of ambiguity is implied.

**B. Remedial v. Penal**

It is next necessary to determine how "damages" should be interpreted. If UCSPA is a "remedial" statute, a liberal construction should be applied while if it is "penal" a strict construction analysis is appropriate. *Burne v. John Hancock Mutual Life Ins. Co.*, 403 A.2d 775, 777 (Me. 1979).

In *Anderson*, the court concluded that UCSPA is penal in nature and must be strictly construed. *Anderson*, 2005 Me. Super. LEXIS at *12. In support of this holding, the court found persuasive the Law Court's discussion in *Burne* of 24-A M.R.S.A. § 2436, the Late Payment Statute. In that case, the court noted that "[t]he provision within

---

[2] In any event, if it were necessary to look to the Carrier Liability Statute for help interpreting UCSPA, it would necessarily imply that the word "damages" is ambiguous.

Section 2436 for interest at the rate of one and a half percent per month upon overdue claims causes the statute to be penal in nature." *Burne*, 403 A.2d at 777. Because "§ 2436-A contains a provision that allows an insured recovery for interest on damages at a rate of one and a half percent per month when an insurer is found in violation of the Act . . . [and b]ecause [Sections 2436 and 2436-A] follow each other in the insurance code and contain a similar provision that charges interest for violating the Act," the court in *Anderson* held that "it follows that both sections are penal in nature and must be strictly construed." *Anderson*, 2005 Me. Super. LEXIS at *12. Justice Cole's analysis in *Anderson* is convincing. Therefore, for the same reasons recognized in *Anderson*, this Court finds UCSPA to be a penal statute.[3]

## C. Strict Construction of UCSPA

Following its recognition of the penal nature of UCSPA, the court in *Anderson* held that under a strict construction of that statute the word "damages" does not include punitive damages. *Anderson*, 2005 Me. Super. LEXIS at *12. There is ample support for this conclusion.

Any duty owed by an insurance company to its insured is created by an insurance contract. *See Marquis v. Farm Family Mutual Ins. Co.*, 628 A.2d 644, 652 (Me. 1993).

---

[3] Plaintiff also argued that UCSPA is remedial in part and penal in part and that, in such a case, the remedial portion of the statute should be interpreted liberally and only the penal portion should be construed strictly. *See People's Sav. Bank. V. Chesley*, 138 Me. 353, 360, 26 A.2d 632, 635 (Me. 1942); *See also United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharm.*, 208 S.W.3d 907, 914 (Mo. 2006) (Stith, J. concurring) (noting that a statute that is remedial in part and penal in part "should be considered a remedial statute when enforcement of the remedy is sought and penal when enforcement of the penalty is sought.") Such an interpretation does not aid Plaintiff in the present case. Punitive damages by their nature are penal, not remedial. *See Braley v. Berkshire Mut. Ins. Co.*, 440 A.2d 359, 361 (stating that unlike compensatory damages, "punitive damages are not awarded as compensation for bodily injury, . . . [but rather] for the protection of society and societal order and to deter similar misconduct by the defendant and others") (internal quotations and citations omitted). As a result, "damages" could only be interpreted to include punitive damages under a strict construction analysis.

"Thus, the traditional remedies for breach of contract are available to the insured in the event an insurer breaches its contractual dut[ies]." *Id.* Regarding traditional breach of contract remedies, it is well established that "'no matter how egregious the breach, punitive damages are unavailable under Maine law for breach of contract . . . .'" *Stull v. First Am. Title Ins. Co.*, 2000 ME 21, ¶ 17, 745 A.2d 975, 981 (quoting *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 776 (Me. 1989)).

Notwithstanding the general rule that there can be no punitive damages for breach of contract, the Law Court recognized in *Marquis* that UCSPA was meant to expand the remedies available to an insured against an insurer, noting that in addition to the traditional remedies for breach of contract, "the legislature has provided the additional remedies set forth in . . . [UCSPA, providing] for statutory interest and attorney fees in certain instances for improper actions of an insurer." *Marquis*, 628 A.2d at 652. The court additionally stated that sufficient motivation is provided to insurance companies to behave properly by the above referenced remedies "'without the further imposition of the specter of punitive damages under [the plaintiff's proposed] independent tort cause of action.'" *Id.* (quoting *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 866 (Wyo. 1990)). This language makes clear that the Law Court did not view punitive damages as available under UCSPA.[4]

## II. HPIA's Preemption of Plaintiff's Breach of Contract Claim

HPIA provides that "[a]n enrollee may maintain a cause of action against a carrier offering a health plan" for breach of the duty of ordinary care in accordance with the

---

[4] While arguably dicta, this language from *Marquis* is directly on point and therefore is a positive indicator of the Law Court's view on this issue.

provisions of that statute. 24-A M.R.S.A. § 4313(1). HPIA goes on to dictate that "[t]he cause of action under this section is the sole and exclusive private remedy under state law for an enrollee against a carrier for its health care treatment decisions that affect the quality of the diagnosis, care or treatment provided to an enrollee." 24-A M.R.S.A. § 4313(13) (emphasis added). Therefore, if Plaintiff's claim is covered by HPIA, he may not maintain an independent cause of action for breach of contract.[5]

Defendant focuses on the "affect the quality of . . . care" language from Section 4313(13), arguing that its denial of coverage for Plaintiff's procedure obviously affects the quality of his medical care and therefore HPIA applies and preempts a separate cause of action for breach of contract. This argument, however, ignores the portion of Section 4313(13) that defines its limitation of remedy as only applicable to causes of action based on a carrier's "health care treatment decisions." In a separate section, HPIA defines a "health care treatment decision" as "a decision regarding diagnosis, care or treatment *when medical services are provided by a health plan* . . . ." 24-A M.R.S.A. 4301-A(6) (emphasis added). In this case, Plaintiff's breach of contract cause of action is predicated on a refusal to provide medical services under his health plan. By the plain language of Section 4313(13) read in conjunction with Section 4301-A(6), HPIA does not apply to Plaintiff's cause of action. As a result, Plaintiff may maintain his cause of action for breach of contract.

Therefore, the entry is:

---

[5] In contrast, if Plaintiff's cause of action under HPIA (Count II) is dismissed, he could maintain his breach of contract cause of action (Count III).

7

Defendant's motion to dismiss as to Plaintiff's claim for punitive damages on Count I is GRANTED. Defendant's motion to dismiss Count III of Plaintiff's complaint is DENIED. Count II is DISMISSED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this 18th day of May, 2007.

Robert E. Crowley
Justice, Superior Court

8

F COURTS
and County
3ox 287
ne 04112-0287

PETER THOMPSON ESQ
92 EXCHANGE STREET
PORTLAND ME   04101

)F COURTS
and County
Box 287
ine 04112-0287

RONALD SCHNEIDER ESQ
PO BOX 9729
PORTLAND ME 04104