Barrett, J.
This is an appeal by third-party plaintiff Boston Basement Technologies, Inc. (“Boston Basement”) of the allowance of summary judgment in favor of its insurer, third-party defendant Admiral Insurance Company (“Admiral”). Boston Basement sued Admiral after it had refused to defend or indemnify Boston Basement when it was sued in this action for the recovery of cleanup costs. In allowing Admiral’s summary judgment motion, the trial court held that Boston Basement’s claim for coverage fell outside the exception to the pollution exclusion clause in its insurance policy. We agree, and affirm the trial court’s ruling and judgment.
The origin of Boston Basement and Admiral’s dispute was an oil leak in April, 2005, at the home of Boston Basement’s client, Richard Silva (“Silva”). Shortly after Boston Basement finished waterproofing Silva’s basement, a leak appeared in Silva’s oil line and an estimated 150 gallons of home heating oil was released into the ground.[2] The Massachusetts Department of Environmental Protection (“DEP”) was notified and issued to Boston Basement a notice of responsibility under §5 of G.L.C. 21E, the Massachusetts Oil and Hazardous Material Release Prevention and Response Act. The notice stated that Boston Basement was a “potentially responsible party” and, therefore, strictly liable for “assessing and/or remediating the release [of oil].” In response to this notice, Boston Basement retained Clean Harbors Environmental Services, Inc. (“Clean Harbors”), which performed the necessary cleanup at a cost of $12,638.40.
In October, 2005, Clean Harbors filed this action against Boston Basement for its failure to pay the amount due under the contract.[3] Boston Basement notified Admiral of the suit, but was denied coverage. Admiral stated that it would not defend, or *73 indemnify, Boston Basement because Clean Harbors’ allegations failed to meet the definition of “occurrence” or “property damage” under the policy.[4] Admiral later informed Boston Basement that it was also denying coverage under the pollution exclusion to the policy.
The policy at issue was a commercial general liability policy, purchased from Admiral for a one-year period beginning March 25, 2005. Section I of the policy set forth liability coverages, including coverage for “Bodily Injury and Property Damage Liability” (Coverage A). Relevant to this case was an exclusion from Coverage A for liability based on pollution, which provided:
This insurance does not apply to:
(2) Any loss, cost or expense arising out of any:
(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of, ‘pollutants’ or
(b) Claim or ‘suit’ by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, ‘pollutants [.]’
The policy provided, however, for the following “exception” to the pollution exclusion:
[Tjhis paragraph does not apply to liability for damages because of ‘property damage’ that the insured would have in the absence of such request, demand, order, or statutory or regulatory requirement, or such claim or ‘suit’ by or on behalf of a governmental authority.
Based on the denial of coverage, Boston Basement filed a third-party complaint against Admiral in November, 2005 for indemnification, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of G.L.c. 93A.[5] Both parties moved for summary judgment.
Admiral argued that the pollution exclusion barred coverage of Boston *74 Basement’s costs to clean up pollution, while the exception to the exclusion retained coverage for its liability for pollution-related property damage. To illustrate the exception’s limited scope, Admiral stated that it had agreed to defend Boston Basement against Silva’s property damage claims. Boston Basement, while not disputing that the exclusion barred coverage of pollution cleanup costs, argued that the exception to the exclusion preserved coverage for cleanup costs that it would have in the absence of the DEP notice of responsibility. Boston Basement argued that because the DEP notice imposed only strict liability, insurance coverage remained for cleanup costs for which it was proved actually liable.
In September, 2006, the trial court granted summary judgment to Admiral and denied summary judgment to Boston Basement. In a written decision, the court stated that Boston Basement’s reading of the exception was unreasonable because it would “negate the exclusion in virtually all circumstances.” “It would make the placement of the exclusion in the policy meaningless,” the court reasoned, “thus violating the fundamental principle of contract law: giving meaning to the terms.” Agreeing with Admiral, the trial court determined that a reasonable construction of the policy limited the exception to property damage “antecedent to losses arising out of [Boston Basement’s] obligation to remediate the fuel leakage,” or that occurred “as a result of the pollutant but not as part of the remediation.”
Summary judgment was properly granted on the third-party complaint because there are no genuine issues of material fact, and Admiral is entitled to judgment as a matter of law. Opara v. Massachusetts Mut. Life Ins. Co., 441 Mass. 539, 544 (2004).
The issue on the parties’ cross motions for summary judgment was whether Boston Basement’s insurance policy provided coverage for pollution cleanup costs arising out of the DEP notice of responsibility. Resolution of that issue depended on the meaning of the phrase “liability for damages because of ‘property damage’ that [Boston Basement] would have in the absence of such request, demand, order, or statutory or regulatory requirement” in the exception to the policy’s pollution exclusion. An insurance policy is interpreted in the same manner as any other written contract. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). When there is no ambiguity, the words of the policy are construed in their “usual and ordinary sense.” Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 280 (1997). Ambiguous language, however, is interpreted “in the way most favorable to the insured.” Citation Ins. Co., supra at 381.
Boston Basement’s principal argument on this appeal is that the exception to the pollution exclusion clause is ambiguous and, thus, should be interpreted in its favor so as to provide coverage for the cleanup costs at issue in Clear Harbors’ action. Whether a provision is ambiguous is a question of law. Diamond Crystal Brands, Inc. v. Backleaf, LLC., 60 Mass. App. Ct. 502, 504-505 (2004). “[D]ifficulty in comprehension does not equate with ambiguity.” Massachusetts Prop. Ins. Underwriting Assoc. v. Wynn, 60 Mass. App. Ct. 824, 827 (2004). Nor is ambiguity created “simply because a controversy exists between parties, each favoring an interpretation contrary to the other.” Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995). Rather, a provision is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co., supra at 381.
The exception to the pollution exclusion in this case is unambiguous. *75 Construed in its usual and ordinary sense, the language of the exception preserved coverage of Boston Basement’s property damage liability incurred before its obligation to clean up pollution as well as its liability for property damage incurred as a result of the pollution, but not as part of the cleanup. This interpretation is reasonable in the context of the entire insurance contract. See Lumbermens Mut. Cas. Co., supra at 466-467; Jefferson Ins. Co. of N.Y. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987). The basic insuring agreement required Admiral to pay "those sums that the insured becomes obligated to pay as damages because of ... ‘property damage,’” and to defend Boston Basement against any suit seeking such damages. Excluded from this coverage was any “loss, cost or expense” arising out of a request or demand to clean up pollution. Excepted from the exclusion were damages because of property damage that Boston Basement would have had in the absence of any request or demand for a cleanup. An integrated reading of the coverage provision, exclusion, and exception discloses an intent to exclude entirely the costs to remediate pollution, but to retain coverage for property damage liability caused by such pollution.
Boston Basement suggests that it is necessary to consider “what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” Hakim, supra at 282, quoting Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 700 (1990). “Massachusetts cases have smiled upon, even if not yet wholly embraced, the process of analyzing a provision of an insurance contract in light of the reasonable expectation of the insurance buyer.” Aguiar v. Generali Assicurazioni Ins. Co., 47 Mass. App. Ct. 687, 690-691 (1999). Assuming the standard applies, and assuming still further that it applies in the absence of ambiguity, County of Barnstable v. American Fin. Corp., 51 Mass. App. Ct. 213, 218 (2001), it is clear that the standard is an objective one. Id., citing Mitcheson v. Izdepski, 32 Mass. App. Ct. 903, 906 (1992). Applying the standard, we find nothing in the record before us indicating that the “structure, content, manner of printing of the [policy], or the methods and practices of marketing” created a reasonable expectation that Boston Basement acquired more extensive insurance coverage than it received by the express terms of the policy. Jefferson Ins. Co. of N.Y., supra at 477, quoting Davenport Peters Co. v. Royal Globe Ins. Co., 490 F. Supp. 286, 291-292 (D. Mass. 1980).
Boston Basement’s contention that the exception is ambiguous is based primarily on Hazen Paper Co., supra at 698, in which the Supreme Judicial Court held that “cleanup costs incurred in response to property damage are ‘damages.’” At issue in that case was the meaning of the following insurance coverage provision: “[Insurer] will pay all sums [Insured] ‘shall become legally obligated to pay as damages because of ... property damage to which this insurance applies.’” Id. at 691. The Court concluded that cleanup costs were damages within the policy language because the term “damages,” which was not defined in the policy, was ambiguous, and that if there were two rational interpretations of policy language, the insured was entitled to the benefit of the one that was more favorable to it. Id. at 700. The Court also stated that a reasonable policyholder reading the language would “fairly expect that the policy covered amounts he must spend to correct pollution damage for which the law holds him responsible.” Id.
Hazen Paper Co. is, however, distinguishable. While the decision provides guid- *76 anee for interpreting the term “damages” in a general coverage provision, it does not discuss the interpretation of this term in the context of a pollution exclusion clause like the one in the case before us. In this case, the term “damages,” although not defined in the policy, is free of ambiguity. A policyholder reading this term in the context of the entire insurance policy could not reasonably expect it to include the costs of a pollution cleanup.[6]
Because we hold that Boston Basement’s pollution cleanup costs did not fall within the exception to the policy’s pollution exclusion, Admiral had no duty to defend or indemnify Boston Basement in this action by Clean Harbors to recover such costs. In the absence of such a contractual duty, summary judgment was properly entered in favor of Admiral on Boston Basement’s contract claims for indemnification, breach of contract, and breach of the implied covenant of good faith and fair dealing. As the G.L.c. 93A third-party claim was derivative, it was also properly adjudicated in Admiral’s favor under Mass. R. Civ. E, Rule 56. Massachusetts Bay Transp. Auth. v. Allianz Ins. Co., 413 Mass. 473, 479 (1992); Landauer, Inc. v. Liberty Mut. Ins. Co., 36 Mass. App. Ct. 177, 179 n.5 (1994).
Judgment affirmed.
So ordered.

 Specifically, the oil drained into Silva’s french drain system and was discovered in the sump bucket and exterior dry well.

 Clean Harbors and Boston Basement settled their contract dispute in March, 2006.

 The policy defined “property damage” as “[pjhysical injury to tangible property, including loss of use of that property...; or [ljoss of use of tangible property that is not physically injured.” An “occurrence” was defined as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” Admiral failed to argue the occurrence/properfy damage basis of denial in its appellate brief. Therefore, the issue is waived. Dist/Mun. Cts. R. A. D. A., Rule 16(a) (4), Morris v. Centola, 2001 Mass. App. Div. 39, 40.

 Boston Basement also impleaded Silva for contribution and indemnification, alleging that Silva negligently caused the oil leak. Silva answered and counterclaimed in January, 2006, alleging that Boston Basement negligently caused the leak.

 No Massachusetts appellate decision has interpreted an exception to a pollution exclusion like the one in the case at bar. Although not binding, we find persuasive Mid-Continent Cas. Co. v. Third Coast Packaging Co., 342 F. Supp. 2d 626, 631-633 (S.D. Tex. 2004), in which nearly identical policy language was interpreted as excluding coverage of pollution cleanup costs. Specifically, the term “damages,” as it appeared in the exception to the pollution exclusion, was held to be unambiguous and not to encompass the costs to remediate pollution. The court distinguished cases that broadly interpreted “damages,” like Hazen Paper Co., in the context of general coverage provisions.